# COMMONWEALTH OF VIRGINIA



HOPEWELL CIRCUIT COURT
Civil Division
100 E BROADWAY, ROOM 251
HOPEWELL  VA  23860
(804) 541-2239

Summons

To: SAVERIO ROCCA
ASSISTANT GENERAL COUNSEL
ACE USA COMPANIES
436 WALNUT STREET
PHILADELPHIA PA 19106

Case No. 670CL17000012-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, January 23, 2017

Clerk of Court: TAMARA J WARD

by _____ *Tamara J Ward, Clerk* _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:



Attorney's name:   LAWSON, ERIK B
10621 JONES ST SUITE 101
FAIRFAX VA 22030

VIRGINIA:

IN THE CIRCUIT COURT OF HOPEWELL

| | |
|---|---|
| REGIONAL ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: CL2017-12 |
| | ) |
| ILLINOIS UNION INSURANCE COMPANY d/b/a | ) |
| ACE ENVIRONMENTAL d/b/a ACE USA d/b/a | ) |
| ACE USA COMPANIES | ) |
| SERVE: (Through Secretary of the Commonwealth) | ) |
| Saverio Rocca, Esquire | ) |
| Assistant General Counsel | ) |
| ACE USA Companies | ) |
| 436 Walnut Street | ) |
| Philadelphia, PA 19106-3703 | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **COMPLAINT**

COMES NOW the Plaintiff, Regional Enterprises, Inc., (hereinafter "Regional," "Insured" or "Plaintiff"), by and through its counsel, files this Complaint against Illinois Union Insurance Company (hereinafter "Illinois Union," "Insurer" or "Defendant"), and hereby states and alleges the following and states as follows:

1.      Regional Enterprises, Inc. is a Virginia corporation incorporated in Virginia with its principal place of doing business in Virginia.

2.      Upon information and belief, Illinois Union is an Illinois corporation, incorporated in Illinois, with its principal place of doing business in Illinois. The Defendant is not a citizen of the Commonwealth of Virginia.

1

3.     The Plaintiff and Defendant entered into a contract of insurance by which the Defendant agreed to provide insurance coverage to the Plaintiff in exchange for a payment of a premium (the "Policy").

4.     Defendant appointed Ace North American Claims as its agent to adjust and handle claims made under the policy.

5.     During the relevant time periods on and around May 15, 2015 and on or around October 2015, the Plaintiff owned a storage facility at 410 Water Street, Hopewell, Virginia.

6.     The Policy covers pollution conditions discovered during its policy period at a location at 410 Water Street, Hopewell, Virginia, all among other coverages.

7.     Pollution conditions were discovered on May 15, 2015 and during October 2015, and were promptly disclosed to the Defendant.

8.     A true copy of the Policy, Numbered PPL G23876103 002 is attached hereto as Exhibit A (the "Policy").

9.     In addition to the express provisions of the policy, the contract of insurance contains within it an implied covenant of the insurer to act in good faith and fair dealing.

10.     Regional discovered and reported to the Defendant a pollution condition, as defined in the Policy, at its chemical storage facility at 410 Water Street, Hopewell, Virginia during the policy period identified in Exhibit A.

11.     A pollution condition, as that term is used in the Policy, occurred when a substance in one of Regional's storage tanks discharged from the tank, and migrated and dispersed over the

ground, and migrated between the elevated sub-floors of the tank and otherwise migrated in and around the tank. The event resulted in a "pollution condition" as described in the Policy.

12.     Regional timely notified the Insurer that it had discovered a pollution condition within the policy period.

13.     As a result of the above discharge, Plaintiff made a "Claims", for "remediation costs", and associated "legal defense expenses", which were all in excess of the "self-insured retention" arising out of the above referenced "pollution condition" on, at, under, or migrating from the 410 Water Street, Hopewell, Virginia.

14.     The "claim" was first made, and the "insured" first discovered such "pollution condition" during the "policy period".

15.     That "claim" or discovery was reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

16.     That "pollution condition" first commenced, in its entirety, on or after the policy inception date shown in Item 2.a. of the Declarations to the Policy of Insurance.

17.     In alternative to the allegation in paragraph 15, the "pollution condition" was first discovered by the insured during the "policy period."

18.     In this matter the Plaintiffs have paid or incurred, the full amount of the "self-insured retention" and the amounts hereunder sought are beyond the "self-insured retention".

19.     The Defendant accepted coverage under the policy.

20.     Regional incurred reasonable expenses to investigate, quantify, monitor, mitigate, abate, remove dispose, treat, neutralize, and immobilize the pollution condition to the extent required by environmental law.

21.     As part of the remediation costs and costs from the above pollution condition, Regional incurred and/or paid expenses to restore, repair and replace the real and personal property to substantially the same condition it was in prior to being damaged during the course of responding to the pollution condition. All such expenses were reasonable and necessary.

22.     Regional incurred costs related to the pollution condition, in an amount in excess of its Self Insured Retention under the Policy.

23.     Regional submitted initial expenses to Ace North American Claims, which handles the claims administration for claims made under the Policy.

24.     At some time after notifying Ace North America Claims of the pollution condition, Ace North American Claims arranged for an inspection of the May 2015 Claim and consulted with an independent party for the clean-up of the exterior of the tank estimated to be in excess of $140,000 for the then remaining expenses required to clean up the exterior of the tank.

25.     In addition to the expenses incurred above, Regional has incurred monies covered by the policy.

26.     Under the Policy has certain oblgiations which include, but are not limited to, the obligation of Illinois Union to pay the Plaintiff the remediation costs and its reasonable expeneses to restore, repair and replace the real and personal property to substantially the same condition it was in prior to being damaged during the course of responding to the pollution condition.

27.    Under the Policy, Illinois Union has an obligation to pay the Plaintiff its reasonable expenses to investigate, quantify, monitor, mitigate, abate, remove dispose, treat, neutralize, and immobilize the pollution condition to the extent required by environmental law.

28.    Illinois Union is in breach of the contract of insurance for failing to properly adjust the loss, for failing to pay the claim and for failing to abide by its contractual covenant of good faith and fair dealing, among other breaches.

29.    Regional incurred the cleanup costs by selling the property subject to a $575,000 escrow account, which was created to cover the costs of the cleanup.

30.    Regional has not received any moneys back from the escrow account.

31.    Regional paid cleanup and remediation costs of $295,679.00 related to the May 15, 2016 pollution condition.

32.    Regional sold the property on or about November 20, 2015, incurred a discount of approximately $511,640.00 to cover remediation costs related to the May 15, 2016 pollution condition which included the leak of Tank 110 on May 15, 2015.

33.    Prior to the sale of the property, on October 13, 2015 Regional received an initial draft Phase II pollution report that identified additional pollution conditions, which was subsequently reported to Ace North American Claims.

34.    The Phase II pollution report revealed additional pollution conditions on site which are covered under the policy

5

35.     Regional notified the Defendant of the October 2015 pollution condition during the policy period.

36.     Regional incurred the cleanup costs by selling the property subject to a $575,000 escrow account, which was created to cover the costs related to the October 2015 pollution condition.

37.     Regional has not received any moneys back from the escrow account.

### COUNT I
### (Breach of Contract – May 15, 2015 and October 2015)

38.     Paragraphs 1-37 are incorporated herein.

39.     The Defendant breached the policy of insurance by failing to pay Regional and failing to adjust the loss promptly and in good faith related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

40.     The Plaintiff has substantially complied with all contractual terms of the Policy related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

41.     The Plaintiffs have complied with all conditions precedent to the bringing of this suit, if any, or those conditions, if any, have been waived by the Insurer related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

42.     Illinois Union's breaches have resulted in damage to the Plaintiff related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

43.     Va. Code § 38.2-209 provides in pertinent part that:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy . . . the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award.

However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy. "Individual," as used in this section, shall mean and include any person, group, business, company, organization, receiver, trustee, security, corporation, partnership, association, or governmental body, and this definition is declaratory of existing policy.

44.     This action constitutes a suit by the Plaintiffs to determine what coverage exists related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

45.     Defendant has not adjusted the loss in good faith and has failed to and has refused to make payment under the policy of insurance and has refused or failed to take such other actions as are necessary to adjust the loss in good faith related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

46.     In addition to a judgment for the amount of the loss, the Plaintiffs are entitled to payment of its costs and attorneys' fees herein related to the May 15, 2015 pollution condition and the October 2015 pollution condition.

WHEREFORE, the Plaintiff, Regional Enterprises, Inc., moves this Court to enter judgment against Illinois Union Insurance Company for One Million, Three Hundred and Eighty Two Thousand, Three Hundred, Nineteen dollars ($1,382,319.00) due the Plaintiffs, for prejudgment interest from the date of loss until the time of judgment at the legal rate, and at the judgment rate thereafter until paid, and for its costs incurred herein including attorney's fees, and for such other relief as to this Court may seem just and mete.

REGIONAL ENTERPRISES, INC.
By Counsel

C. Thomas Brown, VSB #23743
Erik B. Lawson, VSB #79656
SILVER & BROWN
A Professional Corporation
10621 Jones Street, Suite 101
Fairfax, Virginia 22030
(703) 591-6666
(703) 591-5618
tom@virginia-lawyers.net
erik@virginia-lawyers.net
*Counsel for Plaintiff*

## A TRIAL BY JURY IS DEMANDED

8

# EXHIBIT A

2017 JAN 10  PM 4: 05
CIRCUIT COURT CLERKS OFC
TAZEWELL, VIRGINIA
TAMARA J. WARD, CLERK
BY_____ D.C.

 **Illinois Union Insurance Company**
Chicago, Illinois

**Global Premises Pollution
Liability Insurance Policy**

### Declarations

This Policy is issued by the stock Insurance company identified above (hereinafter *the Insurer*).

THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. THIS POLICY PROVIDES COVERAGE FOR REMEDIATION COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.

THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

| Policy No.: GPI G23876103 002 | Renewal of: PPL G23876103 001 |
|---|---|
| **Item 1.** | **First Named Insured:**    **Regional Enterprises, Inc.**<br>**Address:**    **410 Water Street**<br>**Hopewell, VA 23860** |

| Item 2. | COVERAGE A. – New Pollution Conditions Coverage | |
|---|---|---|
| **a. Policy Period** local time of the address shown in item 1 | **Policy Inception Date:** October 29, 2012 12:01 A.M. | **Policy Expiration Date:** October 29, 2015 12:01 A.M. |
| **b. Limits of Liability** per "pollution condition" | $10,000,000 | |
| **c. Limits of Liability** aggregate all "pollution conditions" | $10,000,000 | |
| **d. Self-Insured Retention** per "pollution condition" | $100,000 | |
| | ☐ Coverage A. not provided under this Policy (all fields in Item 2. are left blank) | |

| Item 3. | COVERAGE B. – Pre-Existing Pollution Conditions Coverage | |
|---|---|---|
| **a. Policy Period** local time of the address shown in item 1 | **Policy Inception Date:** October 29, 2012 12:01 A.M. | **Policy Expiration Date:** October 29, 2015 12:01 A.M. |
| **b. Limits of Liability** per "pollution condition" | $10,000,000 | |
| **c. Limits of Liability** aggregate all "pollution conditions" | $10,000,000 | |
| **d. Self-Insured Retention** per "pollution condition" | $100,000 | |
| | ☐ Coverage B. not provided under this Policy (all fields in Item 3. are left blank) | |

PF-30891 (09/10)       © 2010       Page 1 of 3

| Item 4. | COVERAGE C. – Foreign Jurisdiction Pollution Conditions Coverage | |
|---|---|---|
| **a. Policy Period**<br>local time of the address<br>shown in item 1 | Policy Inception Date:<br>**October 29, 2012** 12:01 A.M. | Policy Expiration Date:<br>**October 29, 2015** 12:01 A.M. |
| **b. Limits of Liability**<br>per<br>"pollution condition" | **$10,000,000** | |
| **c. Limits of Liability**<br>aggregate<br>all "pollution conditions" | **$10,000,000** | |
| **d. Self-Insured Retention**<br>per<br>"pollution condition" | **$100,000** | |
| | ☐ Coverage **C.** not provided under this Policy (all fields in Item **4.** are left blank) | |

| Item 5. | Limits of Liability:<br>***Total Policy & Program Aggregate*** | **$10,000,000** |
|---|---|---|

| Item 6. | Premium: | **$184,311**<br><br>(The premium shall be **25%** minimum-earned as of the first day of the Policy Period indicated in Item.s **2.a.**, above) |
|---|---|---|

**\*All dollar amounts identified above are in *United States dollars*.**

| Item 7. | Producer:<br>Name & Address | **Aon Risk Services Central Inc.**<br>**8182 Maryland Ave, Suite 1500**<br>**Saint Louis, MO  63105-1752** |
|---|---|---|

| Item 8. | a. Notice of Claim or Pollution Condition | b. All other Notices |
|---|---|---|
| **Notices** | Environmental Risk Claims Manager<br>ACE USA Claims<br>P.O. Box 5103<br>Scranton, PA 18505-0510<br>Fax  (866) 635-5667<br><br>First Notice Fax:  (800) 951-4119<br>First Notice Email:<br>CasualtyRiskEnvironmentalFirstNotice@acegroup.com | Environmental Risk Underwriting Officer<br>ACE Environmental Risk<br>P.O. Box 1000<br>436 Walnut Street – WA 07A<br>Philadelphia, PA 19106 |
| | 24 Hour Emergency Response Hotline | **1-888-310-9553** |

| Item 9. | Covered Locations: | 1.  **410 Water Street, Hopewell, VA**<br>2.  **132 Legion Street, Johnson City, TN**<br><br>☐ if checked here, schedule of Covered Locations is designated via endorsement. |
|---|---|---|

**Policy Form No.** <u>PF-30892 (09/10)</u> Global Premises Pollution Liability Insurance Policy

**Endorsements and Notices Attached at Policy Issuance:**

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 001 | PF-30933 (09/10) | **Schedule Of Named Insureds Endorsement (GPPL)** |
| 002 | PF-30832 (09/10) | **Coverage Limitation And Reopener Endorsement (GPPL)** |
| 003 | PF-30842 (09/10) | **Covered Operations Coverage (Specifically Identified) Endorsement (GPPL)** |
| 004 | PF-30883 (09/10) | **Schedule Of Foreign Subsidiaries Endorsement (GPPL/PPL Port)** |
| 005 | PF-30888 (09/10) | **Fungi And Legionella Exclusionary Endorsement (GPPL)** |
| 006 | PF-30905 (09/10) | **Schedule Of Known Conditions (Documents) Endorsement (PPL III/GPPL/PPL Port)** |
| 007 | ALL-21101 (11/06) | **Trade Or Economic Sanctions Endorsement** |
| 008 | XS-3U96f (02/06) | **Service Of Suit Endorsement** |
| 009 | LD-5S23h (07/10) | **Signature Endorsement** |
| | TRIA15c (01/08) | **Policyholder Disclosure Notice Of Terrorism Insurance Coverage** |
| | SL-17907 (Ed. 04/05) | **Virginia Surplus Lines Notification** |
| | ALL-20887 (10/06) | **ACE Producer Compensation Practices & Policies** |
| | IL P 001 01 04 | **U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders** |

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.**

William P. Hpstn

**DATE:** _____**October 29, 2012**_____          _____
                              MO/DAY/YR                                                      AUTHORIZED REPRESENTATIVE



**Global Premises Pollution
Liability Insurance Policy**

**This Policy is issued by the stock insurance company identified in the Declarations (hereinafter *the Insurer*).**

**THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. THIS POLICY PROVIDES COVERAGE FOR REMEDIATION COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.**

Throughout this Policy the words *the Insurer* shall refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section **V., DEFINITIONS**.

In consideration of the payment of the premium and in reliance upon all statements made in the Application to this Policy, including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "insured" as described herein.

**I.    INSURING AGREEMENTS**

Solely to the extent that the Coverages, below, are identified on the Declarations to this Policy as being underwritten by the Insurer, the Insurer agrees to pay on behalf of the "insured", or in such jurisdictions where the Insurer may be prevented by law from paying on behalf of the "insured", the Insurer agrees to indemnify the relevant "insured" pursuant to Coverage **C.**, below, for:

**A.    NEW POLLUTION CONDITIONS (Coverage A.)**

"Claims", "remediation costs", and associated "legal defense expenses", in excess of the "self-insured retention", arising out of a "pollution condition" on, at, under, or migrating from a "covered location", provided the "claim" is first made, or the "insured" first discovers such "pollution condition", during the "policy period". Any such discovery of a "pollution condition" must be reported to the Insurer, in writing, during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **A.** only applies to "pollution conditions" that first commence, in their entirety, during the "policy period".

**B.    PRE-EXISTING POLLUTION CONDITIONS (Coverage B.)**

"Claims", "remediation costs", and associated "legal defense expenses", in excess of the "self-insured retention", arising out of a "pollution condition" on, at, under, or migrating from a "covered location", provided the "claim" is first made, or the "insured" first discovers such "pollution condition", during the "policy period". Any such discovery of a "pollution condition" must be reported to the Insurer, in writing, during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **B.** only applies to "pollution conditions" that first commenced, in whole or part, prior to the "policy period".

**C.    FOREIGN POLLUTION CONDITIONS (Coverage C.)**

1.    "Foreign loss", in excess of the "self-insured retention", which the "insured" becomes legally obligated to pay because of a "foreign claim" arising out of, or its discovery of, a "pollution condition"; and

2.    "Foreign subsidiary loss", in excess of the "self-insured retention", which the relevant "named insured" becomes legally obligated to pay because of a "foreign subsidiary claim" arising out of a "pollution condition".

Subject to the Limits of Liability identified in the Declarations to this Policy, as modified by any applicable endorsement attached hereto, if any, the maximum amount that the Insurer shall pay for any "foreign subsidiary loss" pursuant to Paragraph **2.**, immediately above, shall be the larger of either:

1.    The relevant "named insured's" "ownership loss"; or



2. Any portion of the "foreign subsidiary loss", provided that the relevant "named insured" represents that it has a contractual or other legal obligation to:

   a. Reimburse its "foreign subsidiary" for that portion of such "foreign subsidiary loss"; or

   b. Secure insurance for its "foreign subsidiary" for that portion of such "foreign subsidiary loss",

   and that such contractual or other legal obligation existed prior to, and at the time of, the "named insured's" discovery of the "pollution condition", or its discovery of the underlying matter substantiating the "foreign subsidiary claim" being made with respect to the "pollution condition", whichever occurs first.

The coverage afforded pursuant to this Coverage **C.** only applies to the extent that:

1. Any such "pollution condition", and any associated "foreign loss", "ownership loss" or "foreign subsidiary loss", would have otherwise been covered pursuant to either Coverage **A.** or **B.**, above, or any Supplemental Coverage added to this Policy by endorsement, if incurred by an "insured" pursuant to this Policy with respect to a "pollution condition" located in a jurisdiction where the Insurer was licensed or otherwise permitted to insure such loss exposure; and

2. With respect to coverage afforded pursuant to the circumstances identified in Paragraph **1.**, above, <u>only</u>, any such "foreign claim" is first made against the "insured", and reported by the "insured" to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period"; and

3. With respect to coverage afforded pursuant to the circumstances identified in Paragraph **2.**, above, <u>only</u>:

   a. Upon receipt of a "foreign subsidiary claim" to which this Insurance may apply, in whole or in part, the relevant "named insured" exercises its right to assume control of the investigation, adjustment, defense and settlement of any alleged "foreign subsidiary loss" pursuant to Section **III., DEFENSE AND SETTLEMENT**, Subsection **F.**, and assign those rights to the Insurer; and

   b. Any such "foreign subsidiary claim" is first made against the relevant "named insured", and reported by the "named insured" to the Insurer, during the "policy period" or any applicable "extended reporting period".

<u>The insurance provided pursuant to this Coverage **C.** only applies when the "pollution condition" takes place in a jurisdiction in which the Insurer is not licensed and where the Insurer is not permitted to provide insurance without a license.</u>

## II.   LIMITS OF LIABILITY AND SELF-INSURED RETENTION

A. It is expressly agreed that the Insurer's obligation to pay for any covered "claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expense" pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" or "foreign subsidiary" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition". Under no circumstances shall the Insurer be liable to pay any amount within the "self-insured retention". In the event that the "first named insured" cannot provide satisfactory evidence that a "named insured" or "foreign subsidiary" has paid the full amount of the "self-insured retention" with respect to any covered "pollution condition", the "first named insured" shall remain responsible to pay the "self-insured retention" before the Insurer's payment obligation pursuant to this Policy shall attach with respect to coverage sought by any "insured".

B. One "self-insured retention" shall apply to all "claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" and "legal defense expense" arising out of the same, continuous, repeated, or related "pollution condition".

C. With respect to Coverage **A.**, and subject to Subsections **D., I.** and **J.**, below, the most the Insurer shall pay for all "claims", "remediation costs", and associated "legal defense expenses" arising out of the same, continuous, repeated, or related "pollution condition" is the Limit of Liability identified in Item **2.b.** of the Declarations.

D. With respect to Coverage **A.**, and subject to Subsections **I.** and **J.**, below, the Limit of Liability identified in Item **2.c.** of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "claims", "remediation costs" and associated "legal defense expense" for all "pollution conditions".

E. With respect to Coverage **B.**, and subject to Subsections **F., I.** and **J.**, below, the most the Insurer shall pay for all "claims", "remediation costs" and "legal defense expense" arising out of the same, continuous, repeated, or related "pollution condition" is the Limit of Liability identified in Item **3.b.** of the Declarations to this Policy.



F.  With respect to Coverage B., and subject to Subsection I. and J., below, the Limit of Liability identified in Item **3.c.** of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "claims", "remediation costs" and "legal defense expenses" for all "pollution conditions".

G.  With respect to Coverage C., and subject to Subsections H., I. and J., below, the most the Insurer shall reimburse the relevant "named insured" for all "foreign loss", "ownership loss" and "foreign subsidiary loss" arising out of the same, continuous, repeated, or related "pollution conditions" is the Limit of Liability identified in Item **4.b.** of the Declarations.

H.  With respect to Coverage C., and subject to Subsection I. and J., below, the Limit of Liability identified in Item **4.c.** of the Declarations shall be the maximum reimbursement of the Insurer pursuant to this Policy with respect to all "foreign loss", "ownership loss" and "foreign subsidiary loss" for all "pollution conditions".

I.  The Total Policy and Program Aggregate Limit of Liability identified in Item **5.** of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" and "legal defense expense" for all "pollution conditions" covered pursuant to Coverages **A., B.** and **C.**, or any Supplemental Coverages added by endorsement to this Policy, if any.

J.  If the Insurer or an affiliate has issued pollution liability coverage afforded on a discovered and reported basis or claims-made and reported basis consistent with Coverages **A., B.** or **C.**, herein, in one or more policy periods, and a "pollution condition" is first discovered and reported to the Insurer, or a "claim", "foreign claim" or "foreign subsidiary claim" is first made and reported to the Insurer with respect to a "pollution condition", in accordance with the terms and conditions of this Policy, then:

1.  Any continuous, repeated, or related "pollution condition" that is subsequently reported to the Insurer during later policy periods shall be deemed to be one "pollution condition" discovered during this "policy period"; and

2.  All "claims", "foreign claims" and "foreign subsidiary claims" seeking "bodily injury", "property damage" or "remediation costs" arising out of:

    a.  That same, continuous, repeated, or related "pollution condition" that was discovered during this "policy period"; or

    b.  That same, continuous, repeated, or related "pollution condition" that was the subject of a "claim", "foreign claim" or "foreign subsidiary claim" first made and reported during this "policy period" or any applicable "extended reporting period",

    shall be deemed to have been first made and reported during this "policy period" and no other policy shall respond.

## III.  DEFENSE AND SETTLEMENT

A.  The Insurer shall have the right and, subject to the "self-insured retention" obligation and Subsections **F.** and **G.**, below, the duty to defend the "insured" against a "claim", "foreign claim", or underlying matter substantiating a "foreign subsidiary claim", to which this insurance applies.  The Insurer shall have no duty to defend the "insured", or indemnify the relevant "named insured" or "insured" for "legal defense expenses" consistent with Coverage **C.**, herein, and Subsection **F.** and **G.**, below, respectively, against any "claim", "foreign claim", or underlying matter substantiating a "foreign subsidiary claim", to which this insurance does not apply. The Insurer's duty to defend the "insured", or indemnify the relevant "named insured" or "insured" (as applicable), ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the "insured" refuses a settlement offer as provided in Subsection **E.**, below.

B.  The Insurer shall have the right to select legal counsel to represent the "insured" for the investigation, adjustment, and defense of any "claims", "foreign claims", or underlying matters substantiating any "foreign subsidiary claims", covered pursuant to this Policy.  Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld.  "Legal defense expenses" incurred prior to the selection of legal counsel by the Insurer shall not be covered pursuant to this Policy, or credited against the "self-insured retention".

In the event the "insured" is entitled by law to select independent counsel to defend itself at the Insurer's expense, the attorney fees and all other litigation expenses the Insurer shall pay to that counsel are limited to the rates the Insurer actually pays to counsel that the Insurer normally retains in the ordinary course of business when defending "claims" or lawsuits of similar complexity in the jurisdiction where the "claim" arose or is being defended. In addition, the "insured" and the Insurer agree that the Insurer may exercise the right to require that such counsel: **1)** have certain minimum qualifications with respect to their competency, including experience in defending "claims" similar to those being asserted against the "insured"; **2)** maintain suitable errors and omissions



insurance coverage; **3)** be located within a reasonable proximity to the jurisdiction of the "claim"; and **4)** agree in writing to respond in a timely manner to the Insurer's requests for information regarding the "claim". The "insured" may at anytime, by its signed consent, freely and fully waive its right to select independent counsel.

**C.** The "insured" shall have the right and the duty to retain a qualified environmental consultant to perform any investigation and/or remediation of any "pollution condition" covered pursuant to this Policy. The "insured" must receive the written consent of the Insurer prior to the selection and retention of such consultant, except in the event of an "emergency response". Any costs incurred prior to such consent shall not be covered pursuant to this Policy, or credited against the "self-insured retention", except in the event of an "emergency response".

**D.** "Legal defense expenses" reduce the Limits of Liability identified in Items **2., 3., 4.** and **5.** of the Declarations to this Policy and shall be applied to the "self-insured retention".

**E.** The Insurer shall present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable "self-insured retention", is within the Limits of Liability, and does not impose any additional unreasonable burdens on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend, or indemnify the "insured" for "legal defense expense", shall end. Thereafter, the "insured" shall defend such "claim", "foreign claim", or underlying matter substantiating a "foreign subsidiary claim", independently and at the "insured's" own expense. The Insurer's liability shall not exceed the amount for which the "claim", "foreign claim", or underlying matter substantiating a "foreign subsidiary claim", could have been settled if the Insurer's recommendation had been accepted, exclusive of the "self-insured retention".

**F.** In jurisdictions where the Insurer is not licensed or otherwise permitted to insure a "foreign subsidiary", upon receipt of a "foreign subsidiary claim", the relevant "named insured" shall enter into a written agreement with the "foreign subsidiary" regarding the handling of any "pollution condition" or "foreign subsidiary claim" for which the relevant "named insured" may have a right to indemnify, in whole or in part, pursuant to Coverage **C.** of this Policy. Such agreement shall require, at a minimum, that:

   **1.** The relevant "named insured" have the right to control the investigation, adjustment, defense and settlement of any alleged "foreign subsidiary loss" consistent with the Insurer's rights in this Section **III.,** Subsections **B., C.** and **E.,** above; and

   **2.** The relevant "named insured" has subrogation rights consistent with the Insurer's rights in Section **IX., GENERAL CONDITIONS,** Subsection **E., Subrogation,** herein.

   Thereafter, the "named insured" shall immediately assign those rights to the Insurer.

**G.** In jurisdictions where the Insurer is not licensed, and may not provide insurance or conduct the business of insurance without a license, the Insurer shall have the right, but not the duty, to defend the "insured" against any "foreign claim" made in such jurisdiction. If the Insurer elects not to defend the "insured" in such a scenario, the Insurer shall promptly reimburse the "insured" for "legal defense expense" that it incurs to defend itself for "foreign claims" to which this insurance applies. Notwithstanding anything stated in this provision, the Insurer shall maintain all of its rights to control the investigation, adjustment, defense and settlement of any alleged "foreign claim" consistent with Subsections **B., C.** and **E.,** above.

## IV.   COVERAGE TERRITORY

The coverage afforded pursuant to this Policy shall apply to "pollution conditions" worldwide, except for any "pollution conditions" within:

**1.** The People's Republic of China; and

**2.** Any of the following former member states of the Union of Soviet Socialist Republics: Armenia, Azerbaijan, Belarus, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Tajikistan, Turkmenistan, Ukraine and Uzbekistan.

Notwithstanding the foregoing, this Policy shall not afford coverage for any risk which would otherwise be in violation of the laws of the United States of America including, but not limited to, economic or trade sanction laws or export control laws administered by the government of the United States of America.

## V.   DEFINITIONS

**A.   "Additional insured"** means any person or entity specifically endorsed onto this Policy as an "additional insured", if any. Such "additional insured" shall maintain only those rights that are specified by endorsement to this Policy.



B. **"Biodiversity damages"** means injury to, damage sustained by, or the destruction or loss of, land, air, water, groundwater, drinking water, fish, wildlife, biota and their habitats.

C. **"Bodily injury"** means physical injury, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom, and any prospective medical monitoring costs that are intended to confirm any such physical injury, illness or disease.

D. **"Certified industrial hygienist"** means a licensed professional, as established by the American Board of Industrial Hygiene or its functional equivalent in any foreign jurisdiction, that is:

   1. Mutually agreed upon by the Insurer and the "insured"; and

   2. Qualified by knowledge, skill, education and training to perform an assessment of the fungal or bacterial ecology of a property, building systems and/or contents, prepare an investigation protocol, interpret the results and prepare a scope of work to remediate the site to an ordinary ambient indoor air ecology for similar indoor environments.

   The Insurer may also exercise the right to require that such "certified industrial hygienist" have certain minimum qualifications with respect to their competency, including experience with similar "fungi" or *legionella pneumophila* remediation projects.

E. **"Claim"** means the written assertion of a legal right received by the "insured" from a third-party, including, but not limited to, a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage", or "remediation costs" arising out of "pollution conditions" to which this insurance applies.

F. **"Contingent transportation"** means the movement of the "insured's" waste or products by automobile, aircraft, watercraft, railcar or other conveyance beyond the boundaries of a "covered location" by a person or entity, other than an "insured" or "foreign subsidiary", engaged in the business of transporting property for hire, until such time as the waste or product is unloaded from the automobile, aircraft, watercraft, railcar or other conveyance.

G. **"Covered location"** means:

   1. Any location specifically identified in Item **9.** of the Declarations to this Policy;

   2. Any location that meets the prerequisites to coverage identified in the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any; and

   3. Any other location specifically scheduled as a "covered location" by endorsement attached to this Policy, if any.

H. **"Emergency response"** means actions taken and reasonable "remediation costs" incurred within seventy-two (72) hours following the discovery of a "pollution condition" by an "insured" or "foreign subsidiary" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of such "pollution condition".

I. **"Environmental indemnity obligations"** means an "insured's" or "foreign subsidiary's" obligations to defend or indemnify a third-party with respect to a "pollution condition" to which this insurance otherwise applies, provided that such defense or indemnity obligation is explicitly included within a contract identified on the Schedule of Insured Contracts Endorsement attached to this Policy, if any.

J. **"Environmental law"** means any international (including European Union), national, federal, state, provincial, commonwealth, municipal or other local law, statute, directive, ordinance, rule, guidance document, regulation, and all amendments thereto, including voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the "insured" or "foreign subsidiary" with respect to a "pollution condition".

K. **"Extended reporting period"** means the additional period of time in which to report a "claim", "foreign claim" or "foreign subsidiary claim" first made against the "insured" or "foreign subsidiary" during or subsequent to the end of the "policy period".

L. **"First named insured"** means the person or entity as identified in Item **1.** of the Declarations to this Policy. The "first named insured" is the party responsible for the payment of any premiums and the payment of, or evidencing payment of, any applicable "self-insured retention" amounts. The "first named insured" shall also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notices, including notice of cancellation or non-renewal, receipt and acceptance of any endorsements or any other changes to this Policy, return of any premium, assignment of any interest pursuant to this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.



**M. "Foreign claim"** means the assertion of a legal right received by an "insured" from a third-party, including, but not limited to, suits or other actions, alleging responsibility or liability on the part of any "insured" for "foreign loss" arising out of a "pollution condition", to which Coverages **A.** or **B.** of this Policy, or any Supplemental Coverages for third-party liability added to this Policy by endorsement, would otherwise apply, which is located in a jurisdiction in which the Insurer is not licensed and the Insurer is not permitted to provide insurance without a license.

**N. "Foreign loss"** means "claims", "remediation costs", and any associated "legal defense expense" or other covered loss, for which a "insured" is legally responsible for payment of, and to which Coverages **A.** or **B.** of this Policy, or any Supplemental Coverages added to this Policy by endorsement, would otherwise apply, but for the fact that the associated "pollution condition" is located in a jurisdiction in which the Insurer is not licensed and the Insurer is not permitted to provide insurance without a license with respect to the such "pollution condition".

**O. "Foreign subsidiary"** means:

    **1.** The entities identified on the Schedule of Foreign Subsidiaries attached to this Policy, if any; and

    **2.** Any entity which would otherwise qualify as a "named insured" or "additional insured" as defined in any Broad Named Insured or Broad Additional Insured Schedule or Endorsement attached to this Policy, but for the fact that such entity is domiciled, or its principal place of business is located in a jurisdiction in which the Insurer is not licensed and the Insurer is not permitted to provide insurance to the entity without a license.

**P. "Foreign subsidiary claim"** means a written demand made by a "foreign subsidiary" to the "first named insured" or other "named insured" seeking reimbursement or indemnification for "foreign subsidiary loss".

**Q. "Foreign subsidiary loss"** means "claims", "remediation costs", and any associated "legal defense expense" or other covered loss, for which a "foreign subsidiary" is legally responsible for payment of, and to which Coverages **A.** or **B.** of this Policy, or any Supplemental Coverages added to this Policy by endorsement, would otherwise apply, but for the fact that the "foreign subsidiary" is located in a jurisdiction in which the Insurer is not licensed and the Insurer is not permitted to provide insurance without a license with respect to the related "pollution condition".

**R. "Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by "fungi".

**S. "Government action"** means action taken or liability imposed by any international (including European Union), national, federal, state, commonwealth, provincial, municipal or other local government agency or body acting pursuant to the authority of "environmental law".

**T. "Illicit abandonment"** means the intentional placement, abandonment or disposal of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, including "low-level radioactive waste", "mixed waste" and medical, infectious and pathological wastes, on, at or into a "covered location" by a person or entity that:

    **1.** is not an "insured" or "foreign subsidiary";

    **2.** is not affiliated by common ownership with an "insured" or "foreign subsidiary"; and

    **3.** Does not maintain, or has not maintained, an ownership or operational interest in the "covered location".

**U. "Insured"** means the  "first named insured", any "named insured", any "additional insured", and any past or present director or officer of, partner in, employee of, temporary or leased worker of, or, with respect to a limited liability company, a member of, any "insured" while acting within the scope of his or her duties as such.

Notwithstanding the foregoing, any otherwise applicable person, above, that is domiciled, or its principal place of business is located, in a jurisdiction where the Insurer is not licensed and may not insure the person without a license, shall not be an "insured" pursuant to this Policy. Instead, the Insurer agrees to indemnify the "named insured" for amounts it represents that it has a contractual or other legal obligation to indemnify such person for sums that the person is legally obligated to pay for "bodily injury", "property damage" and "remediation costs", including associated "legal defense expense", consistent with the indemnity coverage afforded to "named insureds" with respect to "foreign subsidiary loss" pursuant to Section **I., INSURING AGREEMENTS**, Subsection **C.**, FOREIGN POLLUTION CONDITIONS, Paragraph **2.**, of this Policy.

**V. "Legal defense expense"** means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured" or "foreign subsidiary" in the investigation, adjustment or defense of "claims", "foreign claims" or underlying matters substantiating "foreign subsidiary claims".



W. **"Low-level radioactive waste"** means waste that is radioactive but not classified as the following: high-level waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues, and waste with greater than specified quantities of elements heavier than uranium.

X. **"Mixed waste"** means:

　　1. Waste containing both radioactive and hazardous components as defined pursuant to United States law within the Atomic Energy Act and the Resource Conservation and Recovery Act, as either may be amended; and

　　2. Waste containing both radioactive and hazardous components that is located in any other jurisdiction to the extent that such waste would be subject to the laws of the United States of American, above, if the waste was physically located there.

Y. **"Named Insured"** means any person or entity specifically endorsed onto this Policy as a "named insured", if any. Such "named insured" shall maintain the same rights pursuant to this Policy as the "first named insured", except for those rights specifically reserved for the "first named insured" that are identified in Subsection **L.**, above.

Z. **"Natural resource damage"** means  injury to, destruction of, or loss of, including the resulting loss of value of, fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state or local government, any foreign government, or any Native American Tribe, or, if such resources are subject to a trust restriction on alienation, any members of any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

AA. **"Non-owned disposal site"** means any disposal site or recycling facility not owned or operated by an "insured" or "foreign subsidiary", which receives, or has historically received, an "insured's" or "foreign subsidiary's" waste.

BB. **"Ownership interest"** means the percentage ownership interest that the "named insured" has in its "foreign subsidiary" prior to, and at the time of, the "named insured's" discovery of the "pollution condition", or its discovery of the underlying matter substantiating the "foreign subsidiary claim" with respect to the "pollution condition", whichever occurs first.

CC. **"Ownership loss"** means the "named insured's" "ownership interest" in the "foreign subsidiary" multiplied by the amount of the "foreign subsidiary loss".

DD. **"Policy period"** means:

　　1. The period of time specifically identified in Item **2.a.** of the Declarations to this Policy for Coverage **A.**, Item **3.a.** of the Declarations to this Policy for Coverage **B.** and/or Item **4.a.** of the Declarations to this Policy for Coverage **C.**;

　　2. With respect to "covered locations" added pursuant to the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, the period of time following the closing date of the acquisition transaction or the effective date of the lease, as applicable, through the applicable expiration date of the Policy identified in Item **2.a.**, **3.a.** or **4.a.** of the Declarations to this Policy with respect to New Pollution Conditions Coverage, Pre-Existing Pollution Conditions Coverage and Foreign Pollution Conditions Coverage, respectively; or

　　3. Any shorter period resulting from the cancellation of this Policy.

EE. **"Pollution condition"** means:

　　1. The presence of "fungi" or *legionella pneumophila*;

　　2. "Illicit abandonment"; or

　　3. The discharge, dispersal, release, escape, migration, or seepage  of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater. For the purpose of this definition, waste materials include, but are not limited to, "low-level radioactive waste" and "mixed waste".

FF. **"Property damage"** means:

　　1. Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

　　2. Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

3. Diminished value of tangible property owned by a third-party;

4. "Natural resource damages"; or

5. With respect to "pollution conditions" located within the European Union, "biodiversity damages".

GG. **"Remediation costs"** means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions". If no applicable laws exist that govern the remediation of "fungi" or *legionella pneumophila* in the jurisdiction of the "covered location", necessary "remediation costs" may be established by securing the written professional recommendations of a "certified industrial hygienist" retained with the prior approval of the Insurer.

**"Remediation costs"** shall also include:

1. Reasonable legal cost, where such cost has been incurred by an "insured" or "foreign subsidiary" with the written consent of the Insurer; and

2. Reasonable expenses required to restore, repair or replace real or personal property, to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition".

HH. **"Responsible person"** means any employee of an "insured" responsible for environmental affairs, control, or compliance at a "covered location", and any officer or director of, or partner in, an "insured" or "foreign subsidiary".

II. **"Self-insured retention"** means the dollar amount identified in Item **2.d.** of the Declarations to this Policy for Coverage **A.**, Item **3.d.** of the Declarations to this Policy for Coverage **B.** and/or Item **4.d.** of the Declarations to this Policy for Coverage **C.**, or as otherwise designated by endorsement to this Policy, if any.

JJ. **"Terrorism"** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

KK. **"Underground storage tank"** means any tank and associated piping and appurtenances connected thereto which tank has more than ten percent (10%) of its volume below ground. "Underground storage tank" does not mean a septic tank or oil/water separator.

LL. **"War"** means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

**VI.   EXCLUSIONS**

This insurance shall not apply to:

**A. Asbestos**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to asbestos or asbestos-containing materials.

This exclusion shall not apply to "remediation costs" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater.

**B. Claims Against Foreign Subsidiaries**

Underlying "claims", or associated "legal defense expenses", made directly against any "foreign subsidiary". This exclusion shall not apply to "foreign subsidiary claims" made against a "named insured" that are otherwise covered pursuant to Coverage **C.** of this Policy.

Notwithstanding, this insurance shall not apply to any "foreign subsidiary claim" alleging, based upon, arising out of, or attributable to, any claim, suit, action, loss, or act, error or omission, which would have been excluded if made against or incurred by an "insured" pursuant to Coverages **A.** or **B.,** or any Supplemental Coverages added to this Policy by endorsement.

### C. Contractual Liability

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to liability of others assumed by any "insured" or "foreign subsidiary" through contract or agreement, except if the liability would have attached to the "insured" or "foreign subsidiary" in the absence of such contract or agreement.

This exclusion shall not apply to:

**1.** "Environmental indemnity obligations"; and

**2.** "Foreign subsidiary claims" premised upon liability of a "foreign subsidiary" assumed by a "named insured" through a contract or agreement to which Coverage **C.** of this Policy applies.

### D. Divested Property

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to a "pollution condition" on, at, under or migrating from a "covered location" when such "pollution condition" first commenced after the "covered location" had been sold, abandoned, or given away by any "insured" or "foreign subsidiary", or was condemned.

This exclusion shall not apply to Coverage **B.** and any corresponding foreign coverage provided pursuant to Coverage **C.**

### E. Employers Liability

"Claims", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to "bodily injury" to:

**1.** Any "insured" or any employee of its parent corporation, "foreign subsidiary", subsidiary or affiliate:

   **a.** Arising out of, or in the course of, employment by any "insured", its parent corporation, "foreign subsidiary", subsidiary or affiliate; or

   **b.** Performing duties related to the conduct of the business of any "insured", its parent corporation, "foreign subsidiary, subsidiary or affiliate.

**2.** The spouse, child, parent, brother or sister of any "insured" or employee of its parent corporation, "foreign subsidiary", subsidiary or affiliate as a consequence of Paragraph **1.,** above.

This exclusion applies:

**1.** Whether an "insured" or "foreign subsidiary" may be liable as an employer or in any other capacity; and

**2.** To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

### F. Fines and Penalties

Payment of criminal fines, criminal penalties, punitive, exemplary or multiplied damages, or any associated "claims" seeking exclusively injunctive relief in addition to such fines, penalties or damages. This exclusion also applies to any "legal defense expense" associated with such fines and penalties.

This exclusion shall not apply to punitive or exemplary damages where such coverage is insurable by law.



**G. First-Party Property Damage**

"Claims", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to damage to real or personal property owned by, leased to, loaned to, or rented by any "insured" or "foreign subsidiary", or otherwise in the care, custody, or control of any "insured" or "foreign subsidiary".

This exclusion shall not apply to "remediation costs".

**H. Fraud or Misrepresentation**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to:

1. Fraudulent acts or material misrepresentations on the part of the "first named insured" made:

   a. Within the Application to this Policy; or

   b. During the Application or underwriting process prior to the inception date identified in Item **2.a.**, **3.a.** or **4.a.** of the Declarations to this Policy, as applicable, which would have affected the Insurer's decision to either issue this Policy, or issue this Policy and its endorsements pursuant to the financial terms identified in the Declarations to this Policy; or

2. Fraudulent acts or material misrepresentations on the part of any "responsible person" during the "policy period".

**I. Insured's Internal Expenses**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to expenses incurred by any "insured" or "foreign subsidiary" for services performed by its salaried staff and any employees.

This exclusion shall not apply to "emergency response" or any costs, charges or expenses incurred with the prior written approval of the Insurer at its sole discretion.

**J. Insured vs. Insured**

"Claims" made by any "insured" or "foreign subsidiary" against any other "insured" or "foreign subsidiary".

This exclusion shall not apply to "foreign subsidiary claims" premised upon liability of a "foreign subsidiary" for which a "named insured" has a legal obligation to reimburse such "foreign subsidiary" as contemplated within Coverage **C.** of this Policy.

**K. Intentional Non-Compliance**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to the intentional disregard of, or knowing, willful, or deliberate non-compliance with, any law, statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or executive, judicial or administrative order by any "responsible person".

**L. Known Conditions**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to "pollution conditions" in existence and reported to a "responsible person":

1. Prior to the "policy period"; or

2. With respect to "covered location's" acquired or leased by a "named insured" or "foreign subsidiary" during the "policy period" pursuant to an Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, prior to the closing date of the acquisition or effective date of the lease of such "covered locations",

including any "pollution conditions" discovered during the normal course of further investigation or remediation of such reported "pollution conditions".

This exclusion shall not apply to:

1. "Pollution conditions" specifically referenced in, or identified in documents listed on, the Schedule of Known Conditions Endorsement attached to this Policy, if any; or

2. "Pollution conditions" that have been reported to the "responsible person" as not being actionable pursuant to "environmental law" in any Phase I or Phase II Environmental Site Assessment report (or its functional equivalent with respect to any "covered location" situated in a jurisdiction outside of the United States of

America or Canada) specifically prepared for a "named insured" or "foreign subsidiary" by a qualified environmental consultant. To the extent that the qualified consultant's actionability determination is premised, in whole or in part, on the use of institutional or engineering controls in effect at a "covered location", any coverage afforded pursuant to this paragraph shall be contingent upon:

**1.** The continued maintenance of said engineering controls; and

**2.** The continued use of the property in a manner consistent with the consultant's reported assumptions,

during the "policy period".

**M. Lead-Based Paint**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to lead-based paint.

This exclusion shall not apply to "remediation costs" arising out of lead-based paint discovered in soil or groundwater.

**N. Material Change in Risk**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to a change in the use or operations at a "covered location" that materially increases the likelihood or severity of a "pollution condition" or "claim" from the intended uses or operations identified:

**1.** By the "first named insured" for the insurer in the Application and accompanying underwriting materials provided prior to the inception date identified in Item **2.a.**, **3.a.** or **4.a.** of the Declarations to this Policy, as applicable; or

**2.** With respect to "covered locations" added to the Policy pursuant to the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, as part of the due diligence materials and supplemental underwriting materials provided to the Insurer as part of the notice required pursuant to that endorsement.

This exclusion shall only apply to the "covered location" associated with the change in use or operations and shall not limit coverage for other "covered locations" to which this insurance applies.

**O. Naturally Occurring Materials**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to the presence or removal of naturally occurring materials.

This exclusion shall not apply in those circumstances where naturally occurring substances are present at a "covered location" as a result of human activities or human processes.

**P. Non-Owned Disposal Sites**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to "pollution conditions" on, at, under or migrating from a "non-owned disposal site".

This exclusion shall not apply to any "non-owned disposal site" specifically identified on a Schedule of Non-Owned Disposal Sites Endorsement attached to this Policy, if any.

**Q. Underground Storage Tanks**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to "pollution conditions" emanating from an "underground storage tank" located at a "covered location", when the existence of such "underground storage tank" was known to a "responsible person" prior to the "policy period"; and

**1.** The "underground storage tank" is not identified on the Schedule of Insured Underground Storage Tanks Endorsement attached to this Policy, if any; or

**2.** The "underground storage tank" has been closed or removed, and is not identified on the Schedule of Known Conditions Endorsement attached to this Policy, if any.

**R. Vehicles**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to "pollution conditions" resulting from the use, maintenance or operation, including loading or unloading, of an automobile, aircraft, watercraft, railcar or other conveyance beyond the boundaries of a "covered location".

This exclusion shall not apply to "contingent transportation" if such coverage is added to this Policy by endorsement.

**S. War or Terrorism**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to "pollution conditions" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**VII.  REPORTING AND COOPERATION**

**A.** The "insured" must see to it that the Insurer receives written notice of any "claim", "foreign claim", "foreign subsidiary claim" or "pollution condition", as soon as practicable, at the address identified in Item **8.a.** of the Declarations to this Policy.  Notice should include reasonably detailed information as to:

1. The identity of the "insured" and "foreign subsidiary", including contact information for an appropriate person to contact regarding the handling of the "claim", "foreign claim", "foreign subsidiary claim" or "pollution condition";

2. The identity of the "covered location";

3. The nature of the "claim", "foreign claim", "foreign subsidiary claim" or "pollution condition"; and

4. Any steps undertaken by the "insured" or "foreign subsidiary" to respond to the "claim", "foreign claim", "foreign subsidiary claim" or "pollution condition".

In the event of a "pollution condition", the "insured" and/or "foreign subsidiary" must also take all reasonable measures to provide immediate verbal notice to the Insurer.

**B.** The "insured" must:

1. As soon as practicable, send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim", "foreign claim" or "foreign subsidiary claim";

2. Authorize the Insurer to obtain records and other information;

3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim", "foreign claim" or "foreign subsidiary claim";

4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" or a "foreign subsidiary" because of "bodily injury", "property damage", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss", or "legal defense expense" to which this Policy may apply; and

5. Provide the Insurer with such information and cooperation as it may reasonably require.

**C.** No "insured" or "foreign subsidiary" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", "foreign claim", or underlying matter substantiating any "foreign subsidiary claim", without the written consent of the Insurer.  Nor shall any "insured" retain any consultants or incur any "remediation costs" without the prior express written consent of the Insurer, except in the event of an "emergency response".

**D.** Upon the discovery of a "pollution condition", the "insured" and/or "foreign subsidiary" shall make every attempt to mitigate any loss and comply with applicable "environmental law".  The Insurer shall have the right, but not the duty, to mitigate such "pollution conditions" if, in the sole judgment of the Insurer, the "insured" and/or "foreign subsidiary", fails to take reasonable steps to do so.  In that event, any "remediation costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability identified in the Declarations to this Policy.

**VIII.  EXTENDED REPORTING PERIOD**

**A.** The "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following Cancellation, as described in Subsection A., Paragraph 1. of Section **IX., GENERAL CONDITIONS**, or nonrenewal.

**B.** "Extended reporting periods" shall not reinstate or increase any of the Limits of Liability.  "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided.  A "claim", "foreign claim"

or "foreign subsidiary claim" first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, shall be deemed to have been made and reported on the last day of the "policy period".

C. Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall have a sixty (60) day basic "extended reporting period" without additional charge.

D. Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty-four (34) months for not more than two hundred percent (200%) of the full premium identified in Item **6.** of the Declarations to this Policy, and any additional premiums resulting from coverage added during the "policy period". Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

1. Makes a written request, to the address identified in Item **8.b.** of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

2. Pays the additional premium when due.  If that additional premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## IX.   GENERAL CONDITIONS

### A.  Cancellation

1. This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address identified in Item **8.b.** of the Declarations to this Policy, written notice stating when such cancellation shall be effective.

2. This Policy may be cancelled by the Insurer for the following reasons:

   a. Non-payment of premium; or

   b. Fraud or material misrepresentation on the part of any "insured" or "foreign subsidiary",

   by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

   Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured", including the relevant "named insured" in the event that the implicated entity is a "foreign subsidiary".

3. In the event of cancellation, the premium percentage identified in Item **6.** of the Declarations to this Policy shall be the minimum-earned premium upon the inception date identified in Item **2.a.** of the Declarations to this Policy. Thereafter, the remaining unearned premium, if any, shall be deemed earned by the Insurer on a *pro rata* basis over the remainder of the "policy period".  Any unearned premium amounts due the "first named insured" upon cancellation of this Policy shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of cancellation.

### B.  Inspection and Audit

To the extent of the "insured's" or "foreign subsidiary's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect and sample the "covered locations". The "insured" shall have the concurrent right to collect split samples.  Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with "environmental law", or any other law.

The Insurer may examine and audit the "insured's" books and records during this "policy period" and extensions thereof and within three (3) years after the final termination of this Policy.

### C.  Legal Action Against the Insurer

No person or organization other than an "insured" has a right pursuant to this Policy:

1. To join the Insurer as a party or otherwise bring the Insurer into a suit against any "Insured" or "foreign subsidiary"; or

2. To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

**D. Bankruptcy**

The insolvency or bankruptcy of any "insured" or "foreign subsidiary", or any "insured's" or "foreign subsidiary's" estate, shall not relieve the Insurer of its obligations pursuant to this Policy. However, any such insolvency or bankruptcy of the "insured" or "foreign subsidiary", or the "insured's" or "foreign subsidiary's" estate, shall not relieve the "insured" of its "self-insured retention" obligations pursuant to this Policy. This insurance shall not replace any other insurance to which this Policy is excess, nor shall this Policy drop down to be primary, in the event of the insolvency or bankruptcy of any underlying Insurer.

**E. Subrogation**

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall, and shall cause all "foreign subsidiaries" to, execute and deliver instruments and papers and do whatever else is necessary to secure such rights. All "insureds" and "foreign subsidiaries" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the "self-insured retention". Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

**F. Representations**

By accepting this Policy, the "first named insured" agrees that:

1. The statements in the Declarations, schedules and endorsements to, and Application for, this Policy are accurate and complete;

2. Those statements and representations constitute warranties that the "first named insured" made to the Insurer; and

3. This Policy has been issued in reliance upon the "first named insured's" warranties.

**G. Separation of Insureds**

Except with respect to the Limits of Liability, Cancellation condition 2.a., above, the Fraud or Misrepresentation Exclusion, the Insured vs. Insured Exclusion, the Intentional Non-Compliance Exclusion, the Known Conditions Exclusion, the Material Change in Risk Exclusion, the Underground Storage Tanks Exclusion, and any obligations specifically assigned to the "first named insured", this Policy applies:

1. As if each "named insured" were the only "insured"; and

2. Separately to each "named insured" against whom a "claim" is made.

**H. Other Insurance**

If other valid and collectible insurance is available to any "insured" or "foreign subsidiary" covering a loss also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

**I. Jurisdiction and Venue**

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer and the "insured" shall submit to the exclusive jurisdiction of the State of New York and shall comply with all requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to remove an action to a United States District Court.

**J. Choice of Law**

All matters arising hereunder, including questions relating to the validity, interpretation, performance, and enforcement of this Policy, and the rights, duties and obligations hereunder, shall be determined in accordance with the law and practices of the State of New York.

**K.   Proof of Insurance in Foreign Jurisdictions**

This Policy shall not serve as proof of insurance in any country where non-admitted insurance is prohibited by local applicable law.

**L.   Changes and Assignment**

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

**M.   Headings**

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

**N.   Consent**

Where the consent of the Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

**O.   Currency**

Payments made by the Insurer pursuant to this Policy shall be made in the same currency as the Limits of Liability identified in the Declarations to this Policy. At the Insurer's sole option, and upon any "insured's" request, the Insurer may choose to pay any sums due pursuant to this Policy in any relevant currency. When any such payment involves a currency other than that of the Limits of Liability of this Policy, the Insurer shall convert the value of the payment from the currency of the Limits of Liability of this Policy, using the free rate of exchange as published in **The Wall Street Journal** in effect at the end of the last business day preceding the date of settlement of the loss. Once the Insurer makes any such conversion from another currency, the Insurer shall apply all of the other terms and conditions of this Policy to determine the final amount of its payment obligation.

2017 JAN 10   PM 4: 07
CIRCUIT COURT CLERKS OFC
ROSEWELL, VIRGINIA
TAMARA J. WARD, CLERK
BY _____ D.C.

## SCHEDULE OF NAMED INSUREDS ENDORSEMENT (GPPL)

| Named Insured Regional Enterprises, Inc. | | | Endorsement Number 001 |
|---|---|---|---|
| Policy Symbol PPL | Policy Number G23876103 002 | Policy Period 10/29/2012 to 10/29/2015 | Effective Date of Endorsement 10/29/2012 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.    The persons or entities identified in the Schedule of Named Insureds, below, are "named insureds" pursuant to this Policy, but solely to the extent that such person or entity is domiciled or its principle place of business is located in the United States of America or other jurisdiction where the Insurer is either licensed or legally permitted to provide insurance without a license.

II.   In the event that any person or entity inadvertently identified in the Schedule of Named Insureds, below, is domiciled or its principle place of business is located in a jurisdiction where the Insurer is not licensed and may not provide insurance without a license, such person or entity shall not be a "named insured" pursuant to this Policy. Instead, the Insurer agrees to indemnify the relevant "named insured" for its ownership interest in, or amounts that the relevant "named insured" represents and warrants that it has a contractual or other legal obligation to: 1) indemnify such person or entity for which they or it, respectively, have an underlying legal obligation to pay for "bodily injury", "property damage" or "remediation costs", including any associated "legal defense expense", arising out of a "pollution condition" on, at, under or migrating from a "covered location"; or 2) secure insurance coverage for such person or entity for "bodily injury", "property damage" or "remediation costs", including any associated "legal defense expense", arising out of a "pollution condition" on, at, under or migrating from a "covered location", consistent with the indemnity coverage afforded to relevant "named insureds" with respect to "foreign subsidiaries" pursuant to Section I., INSURING AGREEMENTS, Subsection C., FOREIGN POLLUTION CONDITIONS, of this Policy.

### Schedule of Named Insureds

1. Penn Octane Corporation
2. Rio Vista GP LLC (General Partner)
3. Rio Vista Energy Partners, L.P.
4. Rio Vista Operating GP LLC
5. Rio Vista Operating Partnership L.P. (Operating Partnership)
6. Penn Wilson CNG, Inc.
7. Penn CNG Holdings, Inc.
8. Penn Octane International, L.L.C.
9. Regional Enterprises, Inc.
10. Rio Vista Northport LLC
11. Central Energy GP, LLC
12. Central Energy Partners, LP



All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## COVERAGE LIMITATION AND REOPENER ENDORSEMENT (GPPL)

| Named Insured<br>**Regional Enterprises, Inc.** | | | Endorsement Number<br>**002** |
|---|---|---|---|
| Policy Symbol<br>**PPL** | Policy Number<br>**G23876103 002** | Policy Period<br>**10/29/2012 to 10/29/2015** | Effective Date of Endorsement<br>**10/29/2012** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "Insured" and the Insurer hereby agree to the following changes to this Policy:

I.  COVERAGE LIMITATION:

    ☐ "emergency response costs"; *

    ☐ "business interruption loss"; *

    ☐ "diminution in value"; *

    ☐ "rental income"; *

    ☐ "catastrophe management costs"; *

    ☒ "remediation costs";

    ☐ "property damage";

    ☐ "bodily injury";

        *to the extent applicable due to such Supplemental Coverage being added to this Policy by endorsement hereto.

Coverage is not afforded pursuant to this Policy for any of the exposures indicated above, including any associated "legal defense expenses", with respect to those specific "pollution conditions" identified in the Schedule of Limited Coverage, below.

II.  RE-OPENER OF COVERAGE:

In the event that "closure" is achieved with respect any of the "pollution conditions" identified in Schedule of Limited Coverage, below, then coverage limitations set forth in Section I., above, may be deleted with respect to those "pollution conditions" that achieve such "closure". The coverage limitations identified in Section I., above, can only be deleted by endorsement to this Policy issued by the Insurer.

III.  For the purposes of this Endorsement, "closure" shall mean that the "insured" or "foreign subsidiary" obtains a written No Further Action determination, or otherwise achieves closure in accordance with the regulatory requirements applicable to the subject "pollution conditions", which has been confirmed in writing by the regulatory agency or authority with jurisdiction over the "pollution conditions".

If such "closure" is contingent upon: 1) certain additional actions with respect to the subject "pollution conditions" in order to be effective; or 2) on the use of institutional or engineering controls in effect at a "covered location", then any such additional actions must be completed in order for coverage to be effective pursuant to this Endorsement, and such coverage shall be contingent upon the continued maintenance of said engineering controls and the continued use of the "covered location" in a manner consistent with said institutional control, as applicable, during the "policy period" or any "extended reporting period".

### SCHEDULE OF LIMITED COVERAGE

1.   Arsenic in soil on, at, under or migrating from a "covered location".

2.   Sodium Hydroxide in soil and ground water on, at, under or migrating from a "covered location".

3.   Nitric Acid in soil and ground water on, at, under or migrating from a "covered location".


All other terms and conditions of this Policy remain unchanged.


_____
Authorized Representative

2017 JAN 10  PM 4: 07
CIRCUIT COURT CLERKS OFC
HOPEWELL, VIRGINIA

## COVERED OPERATIONS COVERAGE (Specifically Identified) ENDORSEMENT (GPPL)

| Named Insured<br>**Regional Enterprises, Inc.** | | | Endorsement Number<br>**003** |
|---|---|---|---|
| Policy Symbol<br>**PPL** | Policy Number<br>**G23876103 002** | Policy Period<br>**10/29/2012 to 10/29/2015** | Effective Date of Endorsement<br>**10/29/2012** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insureds" and the Insurer hereby agree to the following changes to this Policy:

I.   Section I., **INSURING AGREEMENTS**, of this Policy is hereby amended by addition of the following:

Supplementary Coverage - Covered Operations

"Claims" and associated "legal defense expenses", in excess of the "self-insured retention", which the "insured" becomes legally obligated to pay arising out of "pollution conditions" resulting from "covered operations", provided the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

The coverage afforded pursuant to this Supplementary Coverage shall only apply to "pollution conditions" that first commence, in their entirety:

1.   During the "policy period" identified in Item **2.a.** of the Declarations to this Policy; or,

2.   If prior to the "policy period" identified in Item **2.a.** of the Declarations to this Policy, then on or after the Retroactive Date identified below, if any.

Retroactive Date: **1/30/2011**

II.  Solely with respect to the coverage afforded pursuant to the Supplementary Coverage in his Endorsement, the following additional provisions apply:

#### Limits of Liability and Self-Insured Retention

Per Pollution Condition Limit of Liability:          **$ 5,000,000**

Per Pollution Condition Self-Insured Retention:   **$ 50,000**

The Aggregate Limit of Liability shown in Item **5.** of the Declarations to this Policy shall continue to be the maximum liability of the Insurer pursuant to this Policy with respect to all exposures covered pursuant to this Policy, including "claims", and associated "legal defense expenses", "foreign loss", "ownership loss" and "foreign subsidiary loss, for all "pollution conditions", resulting from "covered operations" insured pursuant to this Endorsement.

Subject to the preceding paragraph, the Per Pollution Condition Limit of Liability, above, is the most the Insurer shall pay for all "claims", and associated legal defense expenses", "foreign loss", "ownership loss" and "foreign subsidiary loss", arising out the same, continuous, repeated or related "pollution condition" resulting from "covered operations".

III. Section **IV., COVERAGE TERRITORY**, of this Policy is hereby deleted in its entirety and replaced with the following:

**IV. COVERAGE TERRITORY**

The coverage afforded pursuant to this Policy shall apply to "covered locations" situated, or "covered operations" performed, worldwide, except for any locations or operations performed within:

1. The People's Republic of China; and

2. Any of the following former member states of the Union of Soviet Socialist Republics: Armenia, Azerbaijan, Belarus, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Tajikistan, Turkmenistan, Ukraine and Uzbekistan.

Notwithstanding, this Policy shall not afford coverage for any risk which would otherwise be in violation of the laws of the United States including, but not limited to, economic or trade sanction laws or export control laws administered by the United States Government.

**IV.** Section **V., DEFINITIONS,** of this Policy is hereby amended by addition of the following:

**"Covered operations"** means **transportation of insured's customer's product including loading/unloading** performed by or on behalf of a "named insured" outside of the physical boundaries of a "covered location".

**V.** Section **VI., EXCLUSIONS,** of this Policy is hereby amended by addition of the following:

**Products Liability**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expense" arising out of or related to goods or products manufactured, sold, or distributed by an "insured" or "foreign subsidiary".

**Professional Liability**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expense" arising out of or related to the rendering of, or failure to render, professional services, including, but not limited to, recommendations, opinions, and strategies rendered for architectural, consulting, design and engineering work, such as drawings, designs, maps, reports, surveys, change orders, plan specifications, assessment work, remedy selection, site maintenance, equipment selection, and related construction management, supervisory, inspection or engineering services.

This exclusion shall not apply to "pollution conditions" that arise as a result of "covered operations" performed by or on behalf of a "named insured" or "foreign subsidiary".

**Workers' Compensation**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expense" arising out of or related to the Jones Act or any workers' compensation, unemployment compensation, or disability benefits law or related laws.

**VI.** Section **VI., EXCLUSIONS,** Subsection **N., Material Change in Risk,** of this Policy is hereby deleted in its entirety and replaced with the following:

**N. Material Change in Risk**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to a change in the use of a "covered location", or a change in "covered operations", that materially increases the likelihood or severity of a "pollution condition" or "claim" from the intended uses or operations identified:

CIRCUIT COURT CLERKS OFC
HOPEWELL, VIRGINIA
TAMARA J. WARD, CLERK
2017 JAN 11  PH 4: 05

1. By the "first named insured" for the Insurer in the Application and accompanying underwriting materials provided prior to the inception date identified in Item **2.a., 3.a.** or **4.a.** of the Declarations to this Policy, as applicable; or

2. With respect to "covered locations" added to the Policy pursuant to the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, as part of the due diligence materials and supplemental underwriting materials provided to the Insurer as part of the notice required pursuant to that endorsement.

This exclusion shall only apply to:

1. The "covered location"; or

2. "Pollution conditions" arising out of or related to the "covered operations",

associated with the change in use or operations, respectively, and shall not limit coverage for other "covered locations", or "pollution conditions" arising out of or related to other "covered operations", to which this insurance applies.

**VII.** Section **VII., REPORTING AND COOPERATION,** Subsection **A.,** Paragraph **2.,** of this Policy is hereby deleted in its entirety and replaced with the following:

2. The identity of the "covered location" or a detailed description of the "covered operations";

**VIII.** Section **IX., GENERAL CONDITIONS,** Subsection **A., Cancellation,** Paragraph **2.,** of this Policy is hereby amended by addition of the following:

c. Material change in the "covered operations" from the description identified in the Application to this Policy and supporting materials, which results in an increased likelihood of "claims" or "pollution conditions",

All other terms and conditions of this Policy remain unchanged.



_____
Authorized Representative

## SCHEDULE OF FOREIGN SUBSIDIARIES ENDORSEMENT (GPPL/PPL Port)

| Named Insured Regional Enterprises, Inc. | | | Endorsement Number 004 |
|---|---|---|---|
| Policy Symbol PPL | Policy Number G23876103 002 | Policy Period 10/29/2012 to 10/29/2015 | Effective Date of Endorsement 10/29/2012 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insureds" and the Insurer hereby agree that the entities identified below constitute "foreign subsidiaries" as that phrase is used within this Policy:

### Schedule of Foreign Subsidiaries

1. Penn Octane de Mexico, S. de R.L. de C.V.
2. Termatsal, S. de R.L. de C.V.
3. Tergas, S. de R.L. de C.V.
4. Penn Will, S.A. de C.V.
5. Camiones Ecologicos, S.A. de C.V.
6. Grupo Ecologico Industrial, S.A. de C.V.
7. Estacion Ambiental, S.A. de C.V.
8. Estacion Ambiental II, S.A. de C.V.
9. Serinc, S.A. de C.V.

Notwithstanding the Insurer's agreement to specifically identify the entities, above, on this Schedule of Foreign Subsidiaries, the "insureds" and the Insurer agree that such entities are not "insureds" within the meaning of this Policy and that they have no independent legal rights to any payment or indemnification pursuant to any of the Coverages afforded pursuant to this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

PF-30883 (09/10)                                                                    Page 1 of 1

## FUNGI AND LEGIONELLA EXCLUSIONARY ENDORSEMENT (GPPL)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Regional Enterprises, Inc.** | | | **005** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **PPL** | **G23876103 002** | **10/29/2012 to 10/29/2015** | **10/29/2012** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "Insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section **VI., EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Fungi and Legionella**

"Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss" or "legal defense expenses" arising out of or related to the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or *legionella pneumophila*, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

This exclusion shall also apply to any costs or expense arising out of or related to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of, "fungi" or *legionella pneumophila*, by any "insured" or by any other person or entity.

II.  Section **V., DEFINITIONS**, Subsection **EE.**, of this Policy is hereby deleted in its entirety and replaced with the following:

EE. **"Pollution condition"** means:

1.   "illicit abandonment"; or

2.   the discharge, dispersal, release, escape, migration or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater. For the purpose of this definition, waste materials includes, but is not limited to "low-level radioactive waste" and "mixed waste".

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative



## SCHEDULE OF KNOWN CONDITIONS (Documents) ENDORSEMENT
### (PPL III/GPPL/PPL Port)

| Named Insured **Regional Enterprises, Inc.** | | | Endorsement Number **006** |
|---|---|---|---|
| Policy Symbol **PPL** | Policy Number **G23876103 002** | Policy Period **10/29/2012 to 10/29/2015** | Effective Date of Endorsement **10/29/2012** |
| Issued By (Name of Insurance Company) **Illinois Union Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The "insured" and the Insurer hereby agree that the "pollution conditions" identified within the documents listed in the Schedule of Known Conditions (Documents), below, have been disclosed to the Insurer prior to the inception of this Policy:

### SCHEDULE OF KNOWN CONDITIONS (Documents)

1. *Terminal Assessment Report* for Regional Enterprises, Inc. in Hopewell, VA prepared by U.N.L Engineering Corporation and dated June 2007, including Storage Tank Inspection Reports for Tank 60, 90, 120, 130, 100, 110, 30, 31, 32, 7, 9, 10/11, and 50.

2. *Site Environmental Assessment, ASTM Practice E 1527-05 Phase I Modified Report Incorporating Limited Phase 2 Site Sampling, Remediation Cost Scenarios, and Regulatory Compliance Evaluation* of the Regional Enterprises, Inc. Bulk Liquid Terminal in Hopewell, VA prepared by Delta Consultants on June 29, 2007 (including appendices A-H).

All other terms and conditions of this Policy remain unchanged.



_____
Authorized Representative

PF-30905 (09/10)                    © 2010                    Page 1 of 1

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>**Regional Enterprises, Inc.** | | | Endorsement Number<br>**007** |
|---|---|---|---|
| Policy Symbol<br>**PPL** | Policy Number<br>**G23876103 002** | Policy Period<br>**10/29/2012 to 10/29/2015** | Effective Date of Endorsement<br>**10/29/2012** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.



_____
Authorized Agent

## SERVICE OF SUIT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Regional Enterprises, Inc.** | | | **008** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **PPL** | **G23876103 002** | **10/29/2012 to 10/29/2015** | **10/29/2012** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Saverio Rocca, Assistant General Counsel
> ACE USA Companies
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.

The law of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the Insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

XS-3U96f (02/06)

## SIGNATURE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Regional Enterprises, Inc.** | | | **009** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **PPL** | **G23876103 002** | **10/29/2012 to 10/29/2015** | **10/29/2012** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 700, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
500 Colonial Center Parkway, Suite 200, Roswell, GA 30076

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

2017 JAN 10  PM 4: 06
CIRCUIT COURT CLERKS OFC
HOPEWELL, VIRGINIA
TAHARA J. WADO, CLERK

_____
Authorized Representative

LD-5S23h  (07/10) Ptd. in U.S.A.



**Illinois Union Insurance Company**

Insurance Company
**Regional Enterprises, Inc.**

Policyholder
**GPI G23876103 002**

Policy Number
**Aon Risk Services Central Inc.**

Broker/Producer

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, that you have the right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

> Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of **$N/A**, however you elected to decline such coverage.

TRIA15c (01/08)

ACE USA
☒ Illinois Union Insurance Company
☐ INA Surplus Insurance Company
☐ Westchester Surplus Lines Insurance Company
☐ _____

Insured:
**Regional Enterprises, Inc.**
**410 Water Street**
**Hopewell, VA 23860**

Attached To Policy No.:  **GPI G23876103 002**

Effective Date:  **October 29, 2012**

## VIRGINIA SURPLUS LINES NOTIFICATION
### Form SLB-9

THE INSURANCE POLICY THAT YOU HAVE APPLIED FOR HAS BEEN PLACED WITH OR IS BEING OBTAINED FROM AN INSURER APPROVED BY THE STATE CORPORATION COMMISSION FOR ISSUANCE OF SURPLUS LINES INSURANCE IN THIS COMMONWEALTH, BUT NOT LICENSED OR REGULATED BY THE STATE CORPORATION COMMISSION OF THE COMMONWEALTH OF VIRGINIA. THEREFORE YOU, THE POLICYHOLDER, AND PERSONS FILING A CLAIM AGAINST YOU ARE NOT PROTECTED UNDER THE VIRGINIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION ACT (SECTION 38.2-1600 et seq.) AGAINST DEFAULT OF THE COMPANY DUE TO INSOLVENCY. IN THE EVENT OF INSURANCE COMPANY INSOLVENCY YOU MAY BE UNABLE TO COLLECT ANY AMOUNT OWED TO YOU BY THE COMPANY REGARDLESS OF THE TERMS OF THIS INSURANCE POLICY, AND YOU MAY HAVE TO PAY FOR ANY CLAIMS MADE AGAINST YOU.

_____
(Name of Surplus Lines Broker)

_____
(License Number)

_____
(Broker's Mailing Address)

2017 JAN 10  PM 4: 06
CIRCUIT COURT CLERKS OFC
HOPEWELL, VIRGINIA
TAMARA J. WARD, CLERK

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

SL-17907 (Ed. 04/05)

Page 1 of 1



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

2017 JAN 10  PM 4: 06

CIRCUIT COURT CLERKS OFC
HOPEWELL, VIRGINIA
TAMARA J. WARD, CLERK

ALL-20887 (10/06)

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**IL P 001 01 04**　　　　　　© ISO Properties, Inc., 2004　　　　　　**Page 1 of 1**

# First Class Mail

First Class Mail

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Illinois Union Ins. Co.
d/b/a ACE
Salvo Rocca, Esq.
436 Walnut Street
Philadelphia, PA 19106

9590 9402 1672 6053 4158 66

2. Article Number (Transfer from service label)

7016 0910 0000 4874 1602

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt




PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®



7016 0910 0000 4874 1802

P.C.
ET

2030

# First Class Mail

Illinois Union Insurance Company d/b/a ACE Environmental
d/b/a ACE USA d/b/a ACE USA Companies
Serve: Saverio Rocca, Esquire
Assistant General Counsel
ACE USA Companies
436 Walnut Street
Philadelphia, PA 19106-3703



